## Lininger v. Ralston

*Kim C. Kesner,* for petitioner.
*Lawrence B. Seaman,* for respondent.

REILLY, *J.,* September 8, 1982—This matter comes before the court upon a petition filed on behalf of the Board of Commissioners of Clearfield County seeking an order directing controller-defendant above-named to approve payment of a bill from Swift, Kennedy & Company, Inc., of DuBois, Pa., for the premium cost of a collective bond for all tax collectors within Clearfield County. The history leading up to this petition is set forth in a stipulation of facts entered into between the parties and attached to petitioners' brief. Defendant-controller has taken the position that the purchase by the Commissioners of a joint bond was unlawful and beyond their authority in that the purchase was not exposed to public bidding. The issue before the court is whether the Commissioners' purchase of the collective bond was within their authority or whether they so failed to comply with the local Tax Collection Law in awarding the bond by not advertising the same for bids as to render the bond invalid. This court holds that the commissioners were in error in purchasing

the bond as they did without complying with the governing statutes.

Paragraph 5511.4(b) and (b.1) of the Local Tax Collection Law provides in pertinent part:

However, in addition to the obvious distinction that MacCalman involved considerations of the health and safety of the public not present here, MacCalman is also distinguishable in that it did not involve violations by the commissioners of any statutory provisions requiring public bidding or advertising.

In construing statutes requiring competitive bidding and the awarding of a contract to the lowest responsible bidder, the courts have held the provisions thereof to be mandatory. See Com. v. Jones, 283 Pa. 582, 129 A.635 (1925); Ruggles v. Moore, 97 Pa. Super. 47 (1929). Further, that such statutes "must be strictly construed and the words used therein cannot be extended beyond their plain meaning." Com. v. Rankin, 158 Pa. Super. 12, 16, 43 A. 2d 441 (1945).

More specifically, the Supreme Court in Patterson v. Delaware County, 404 Pa. 5 171 A. 2d 47, (1961) considered 16 P.S. §1802(a), which is the precise section of the County Code at issue here. In Patterson, the court held that that section ". . . was passed to prevent fraud. Sometimes, as in this case, it works a gross injustice, but it cannot be evaded, ignored, nullified or rewritten by a Court." 404 Pa. 5, 7.

For that reason and because a county is not bound by a contract entered into without authority of those executing it, the court cannot order the controller to pay the premium involved here as it is unenforceable against the county by Swift, Kennedy & Company, Inc. Since the commissioners did not strictly comply with the express requirements of the local Tax

Collection Law involving public bidding and advertising this court is without power to correct their action by ordering the controller to pay. The statute involved here must be strictly interpreted and as a result the collective bond purchased declared invalid.

"In boroughs, towns and townships of the second class, the elected tax collector shall be the collector of borough, town or township taxes, as the case may be, and of county, county institution district, school district and vocational school district taxes . . . . He shall enter into one surety bond to the Commonwealth for all taxes to be collected by him, in an amount to be fixed by the court of common pleas of the county, which amount shall never exceed the estimated amount of taxes charged in the duplicates to be delivered to him in one year. Such bond may, at the option of the tax collector, be an annual bond or may cover the full term of office for which the tax collector shall have been elected . . . . The board of commissioners of any county by resolution adopted no later than November 1 of the prior year may authorize and require for the following year the joint bidding by the board of commissioners of bonds for all tax collectors for the county and for boroughs, incorporated towns and townships of the second class, and school districts and vocational school districts within the county. The joint bidding of the bonds shall be subject to all provisions of this act not inconsistent with the requirements of joint bidding . . . . In boroughs, towns and townships of the second class, . . . the premium on the bond shall be paid by the respective taxing districts. Each taxing district shall be liable to pay that percentage of the bond premium as the total taxes charged in the duplicate of the taxing district bears to the total taxes charged in the

duplicate of all of the taxing districts. 72 P.S. §5511.4(b) and (b.1)

As stipulated by the parties in August of 1981, the commissioners passed a resolution requiring the joint bidding of bonds for all tax collectors in Clearfield County in accordance with the above-quoted act. Thereafter, they advised all the tax collectors of this decision and began preparing for bidding of the bonds prior to January 1, 1982. In December of 1981, the commissioners were advised by a consultant hired by them to assist in insurance matters that the bonds could not be properly bid in the time available and that they should therefore purchase a collective bond from Swift, Kennedy & Company, Inc., which company had been awarded the county's property and casualty coverage after competitive bidding. This the commissioners elected to do without any further public meeting on the action or joint bidding of the tax collector bonds or rescission of the above resolution previously passed by the board and calling for such bidding. On or about January 19, 1982, defendant-controller orally advised the commissioners of his opposition to their action and reiterated said opposition in a letter dated January 21, 1982. Since he was of the opinion that such a collective bond could only be purchased after public bidding, defendant-controller's refusal to sign the check for payment thereof has led to this action.

Petitioners argue that the purchase of the bond was within their discretion as contractors for the county (see 16 P.S. §1801). In addition, the statute quoted further directs the commissioners to use their capacity as contractors for the county in such a manner as to achieve savings to the county where possible, and the parties agree such savings did occur here in that the cost of the collective bond purchased from Swift, Kennedy & Company, Inc.,

was $4,597 less than the total cost of all bonds purchased by the tax collectors individually in 1981. Petitioners therefore argue that absent any allegation of bad faith, fraud or capricious conduct on their part, their discretion in entering into a contract on behalf of the county should not be disturbed by this court.

Defendant is correct in his assertion that petitioners' argument ignores the express language of the local Tax Collection Law; specifically such argument runs counter to paragraph 5511.4(1) of said act which provides:

"Notwithstanding any other act to the contrary, joint bidding of bonds of tax collectors *shall be subject to* the requirements of counties for advertising of bids for contracts or purchases, except that the provisions relating to minimum amount of expenditure shall not apply." (Emphasis added.) 72 P.S. §5511.4(1).

The requirements alluded to therein include §1802 of the County Code, which section provides:

"(a) All contracts for services and personal property where the amount thereof exceeds the sum of four thousand ($4,000.00) dollars, shall be written and shall, except as otherwise hereinafter specified, be made by advertising for bids.

(b) Contracts or purchases in excess of four thousand ($4,000.00) dollars, except those hereinafter mentioned, *shall not be made except with and from the lowest responsible bidder, after due notice in one newspaper of general circulation,* published or circulating in the county . . . . The first advertisement shall be published not less than ten days prior to the date fixed for the opening of bids. The requirements of this subsection need not be followed in cases of emergency, but in such cases

the actual emergency shall be declared and stated by resolution of the commissioners." (Emphasis supplied.) 16 P.S. §1802(a) and (b).

In the instant case, none of the exceptions to the applicability of the act applied and no actual emergency was ever declared or in fact ever existed so as to preclude the application of this section.

In short, the purchase of a collective bond for all the county tax collectors was not within the discretion of the commissioners. The act plainly provides for and requires public advertising and bidding, none of which occurred here. Without complying with these requirements, the commissioners simply had no discretion to enter into such a contract or purchase. The court therefore need not find any bad faith, fraud, capricious conduct or abuse of discretion on the part of the commissioners in order to overturn their decision here. Moreover, any averments of cost savings (which have not been conclusively stated by the parties except as estimates with reference to the total cost of such bonding of the tax collectors in 1981) are also of no moment. The commissioners simply failed to comply with the express requirements of the act and so acted outside the powers expressly or impliedly granted to them as sole contractors for the county. Petitioners argue that their decision to purchase a collective bond should stand in spite of the above cited provisions relying on MacCalman v. County of Bucks, 411 Pa. 316, 191 A. 2d 265 (1963). A close reading of that case reveals, however, that petitioners' reliance thereon is misplaced.

In MacCalman, the Commissioners of Bucks County entered into a service agreement committing the county to make direct payments to a water and sewage authority in order to make the proposed

construction of a sewage system for the county economically feasible. In challenging this agreement, several taxpayers of Bucks County contended that it clearly abridged the statutory proscription against a board of commissioners contractually impairing or limiting future boards of county commissioners. In affirming the lower court's dismissal of the complaint, the Supreme Court held that the consideration of urgency and necessity in upholding the public interest demanded that the general rule proscribing such conduct by the commissioners be abrogated under such circumstances since no allegation of bad faith or ulterior motive was averred.

Petitioners here urge similar circumstances of urgency and necessity in that no feasible alternative to the purchase of a collective bond existed when they were advised that inadequate time was available for the bidding procedure. Moreover, no allegations of bad faith or ulterior motives were alleged by defendant-controller and in fact the savings in cost over previous years is not disputed by the controller.

Respondent further urges that the commissioners improperly violated their own resolution requiring joint bidding by never rescinding said resolution and further that they violated the Sunshine Law, 65 P.S. §261, et seq., in awarding the contract without a further public meeting on the issue. Even assuming that the award impliedly rescinded the earlier resolution calling for joint bidding of the bonds, respondent is correct in his assertion that the Sunshine Law was violated.

That act provides that:

"The meeting or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times.

*No formal action shall be valid unless such formal action is taken during a public meeting."* (Emphasis supplied.) 65 P.S. §262.

"Formal action: is defined by 65 P.S. §261 as:

" . . . the taking of any vote on any resolution, rule, order, motion, regulation or ordinance or the setting of any official policy."

Since the commissioners were required to secure public bidding and advertising it is apparent that such involved formal action in the nature of a resolution. Since this was not done, the Sunshine Law was clearly violated.

Therefore, the awarding of such bonds and/or contracts without first conducting public meetings followed by public advertising and bids violates not only the local Tax Collection Law but also the Sunshine Law and to permit such to continue is beyond the authority of this court. Because of the fact that the calendar year is now almost at a close, it would appear to be virtually impossible to correct the errors committed in the bonding procedure of 1982 and this court will not order that the existing bond be rescinded although it certainly does not condone the manner in which it was awarded. This court will, however, take steps to insure that henceforth the awarding of tax collection bonds as well as all other business of the county subject to statutory requirements shall be performed in full accordance with said requirements.

Wherefore, the court enters the following

## ORDER

Now, September 8, 1982, it is the order of this court that the petition filed on behalf of the county commissioners above-named be and is hereby dis-

234

missed as being without merit. It is the further order of this court, however, that Swift, Kennedy and Company, Inc., be paid the premium costs for the collective bond for all tax collectors in Clearfield County for the calendar year of 1982.

It is the further order of this court that any future tax collectors' bond contracted for by the county shall be done in strict compliance with requirements of the local Tax Collectors'. Law and any other pertinent tax law.