579 A.2d 1358

**Mark S. KEENHEEL, Esquire, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA SECURITIES COMMISSION, Robert M. Lam, Chairman of the Pennsylvania Securities Commission, et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1990.

Decided Aug. 21, 1990.

Mark S. Keenheel, pro se.

David M. Donaldson, Sr. Deputy Atty. Gen., with him, John C. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., for respondents.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

SMITH, Judge.

Mark S. Keenheel (Petitioner) filed a Complaint in Equity/Petition for Rescission with this Court seeking to rescind an agreement he entered into with Respondent, the Pennsylvania Securities Commission (Commission)[1], on August 27, 1987. Before this Court are motions for summary judgment filed by both parties.

I

Petitioner was employed as an attorney with the Commission, and in March of 1987 filed race discrimination charges against the Commission and several of its officials with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. On June 17, 1987, the Commission terminated Petitioner's employment effective September 1, 1987 in response to which Petitioner filed additional charges with the above-mentioned agencies alleging retaliatory termination.

Negotiations commenced between the parties culminating in a settlement agreement which voided the termination of Petitioner's employment and provided that he would resign effective September 1, 1987. The Commission agreed to pay Petitioner the sum of $6000 in satisfaction of costs and expenses and further agreed that all personnel records, other than routine data, would be held by the Commission as non-public records pursuant to the "Right to Know" Act, Act of June 21, 1957, P.L. 390, 65 P.S. §§ 66.1–66.4. Addi-

1. The additional Respondents are Robert M. Lam, Chairman of the Commission; Elliot Klein, Chief Counsel; and Victor Wright, Director of Enforcement.

tionally, the agreement specified that information as to these records would not be disclosed publicly; and in the event of any inquiries to the Commission concerning Petitioner's job performance, the Commission would respond that his performance had been "very good." In consideration therefor, Petitioner agreed to withdraw his charges of racial discrimination.

On August 25, 1988, Petitioner filed the action pending before this court alleging a material breach of the agreement by the Commission in that it disclosed to an attorney with the Securities and Exchange Commission information concerning Petitioner's handling of an investigation while employed by the Commission. Petitioner sought equitable rescission of the agreement and an order allowing him to reinstate his discrimination complaints with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. Thereafter, Petitioner amended his complaint to include an allegation that the agreement was void under Section 4 of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. § 274 and alleged that the Commission adopted the agreement in private session in contravention of the Sunshine Act.

By order of this Court dated July 25, 1988, this matter was transferred to the Board of Claims pursuant to Section 5103 of the Judicial Code, 42 Pa.C.S. § 5103, on the basis that the Board of Claims possessed jurisdiction to hear disputes involving a contract between a state agency and its former employee. This order was reversed by the Supreme Court in *Keenheel v. Pennsylvania Securities Commission*, 523 Pa. 223, 565 A.2d 1147 (1989), and remanded to this Court for consideration of Petitioner's claim for breach of the agreement.

## II

Petitioner raises one issue in his motion for summary judgment: Whether the Commission was a non-legal entity on the date it entered into the agreement with Petitioner thus rendering its action void.

Section 6 of the Sunset Act, Act of December 22, 1981, P.L. 508, *as amended,* 71 P.S. § 1795.6, provided for the expiration of the Commission on December 31, 1983. As authorized by Section 4 of the Sunset Act, 71 P.S. § 1795.4, the Leadership Committee [2] extended the life of the agency until December 31, 1984, and on November 28, 1984, the House and Senate passed separate but identical resolutions entitled Sunset Resolution 17, extending the life of the Commission until the next review and termination cycle scheduled pursuant to Section 7 of the Sunset Act, 71 P.S. § 1795.7. Former Pennsylvania Governor Richard Thornburgh signed Senate Sunset Resolution 17 on December 30, 1984.

On December 13, 1989, the Supreme Court filed its opinion in *Blackwell v. State Ethics Commission,* 523 Pa. 347, 567 A.2d 630 (1989), declaring unconstitutional Section 4(4) of the Sunset Act which allows the Leadership Committee to postpone termination of an agency for up to one year. The Court held that Section 4(4) of the Sunset Act vested legislative power in the Leadership Committee contrary to the Pennsylvania Constitution, Art. II, § 1. This Court, in *Blackwell v. State Ethics Commission,* 130 Pa.Commonwealth Ct. 646, 569 A.2d 378 (1990), held that the Supreme Court's decision would be applied prospectively only by this Court.[3] This decision is presently before the Supreme Court for review and until the issue of prospective application is ruled upon, this Court is bound to apply it to the matter *sub judice.* Accordingly, Petitioner's motion for summary judgment is denied.

■ Although not addressed in the Brief in support of his motion for summary judgment, Petitioner alleges in his amended complaint that the Commission voted to accept the

2. The Leadership Committee consists of the Speaker of the House of Representatives, the President pro tempore of the Senate, and the Majority and Minority Leaders of both houses.

3. In *West Shore School District v. Pennsylvania Labor Relations Board,* 131 Pa.Commonwealth Ct. 476, 570 A.2d 1354 (1990), the Honorable Dan Pellegrini declared the entire Sunset Act unconstitutional. This case is also on appeal before the Supreme Court.

settlement agreement in executive session in violation of Section 4 of the Sunshine Act, 65 P.S. § 274, which provides that official action take place at a meeting open to the public unless lawfully closed pursuant to Section 8, 65 P.S. § 278. At its August 27, 1987 meeting, the Commission, indicating that it wished to discuss a personnel matter, went into executive session. The minutes from that meeting state that "[t]he Commission reviewed the proposed agreement for settlement of matters relating to Counsel Mark S. Keenheel and voted to enter into the agreement upon the agreement being duly executed by Counsel Keenheel." Petitioner alleges that the Commission's official action to accept the settlement agreement is void and not binding pursuant to Section 13 of the Sunshine Act, 65 P.S. § 283.

Section 8(a)(1) of the Sunshine Act allows an agency to go into executive session to discuss any matter involving the employment, appointment, terms and conditions of employment, evaluation of performance, promotion or discipline of a current employee. Section 8 specifically provides, however, that official action on discussions held in executive session shall be taken in open meeting. 65 P.S. § 278. The Commission in the matter *sub judice,* apparently failed to return to open meeting in order to vote on whether or not to enter into the agreement.[4]

It is not axiomatic that this Court must invalidate official action of the Commission taken in executive session. Section 13 of the Sunshine Act, 65 P.S. § 283, grants the court the discretion to invalidate any and all official action taken at an illegally closed meeting. Although the Commission properly went into executive session to discuss settlement of Petitioner's claims concerning his employment, it should have returned to open meeting to vote. This Court is not prepared, however, to invalidate the Commission's approval

---

4. The Commission argues that this claim is barred by Section 13 of the Sunshine Act, 65 P.S. § 283, which requires, *inter alia,* that legal challenges be filed within 30 days from the discovery of any action taken at a closed meeting at which the Sunshine Act was violated. Petitioner contends that he only learned of the closed meeting in May of 1988 during pre-trial discovery which fact would render his challenge timely filed.

of the settlement agreement. Petitioner has not claimed injury because of this violation, and this Court therefore does not find that justice would be served by setting aside the settlement agreement on this basis. *Ackerman v. Upper Mt. Bethel Township*, 130 Pa.Commonwealth Ct. 254, 567 A.2d 1116 (1989).

### III

In its motion for summary judgment, the Commission argues that Petitioner is not entitled to the equitable remedy of rescission for several reasons. Initially, it contends that because Petitioner seeks only partial rescission (that is, the right to reinstate his claims of discrimination without returning the $6000 received in consideration for his release of claims), he is not entitled to rescission. Citing *Sherman v. Medicine Shoppe International, Inc.*, 581 F.Supp. 445 (E.D.Pa.1984), the Commission argues that partial rescission is improper.

Rescission "amounts to the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract." *Metropolitan Property and Liability Insurance Co. v. Pennsylvania Insurance Commissioner*, 97 Pa.Commonwealth Ct. 219, 222, 509 A.2d 1346, 1348 (1986), *aff'd*, 517 Pa. 218, 535 A.2d 588 (1987). The purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract. *Sullivan v. Allegheny Ford Truck Sales*, 283 Pa.Superior Ct. 351, 423 A.2d 1292 (1980). One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract. *Fowler v. Meadow Brook Water Co.*, 208 Pa. 473, 57 A. 959 (1904).

Petitioner attempts to avoid this requirement by arguing that the $6000 was not the subject matter of the

agreement but merely reimbursement for costs and expenses incurred by him. The first stipulation of the agreement, however, indicates that payment of the $6000 to Petitioner was the very heart of the contract:

1. Upon receipt of the payment provided for in enumerated paragraph 6 of this Agreement, Mr. Keenheel will promptly (1) withdraw the Complaints filed with the EEOC and PHRC and (2) obtain the written consent to such withdrawal from the EEOC.

Agreement of August 27, 1987, p. 1. It would thus appear that restoration or tender of this money to the Commission is a condition precedent to Petitioner's right to maintain an action for rescission. The failure of the Petitioner to tender the money is not necessarily fatal to his claim, however, for the reason that this Court has the equitable power to condition rescission upon a return of the $6000 to the Commission. *Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504 (E.D.Pa.1985); *see also Brown v. National Permanent Federal Savings & Loan Assoc.*, 683 F.2d 444 (D.C.Cir.1982); *Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir.1976). Consequently, if based upon the record developed, this Court determines that rescission of the agreement is warranted, recission will only be permitted upon tender by Petitioner of the $6000 paid to him by the Commission.

## IV

The Commission next argues that equity will only intervene to grant rescission when there are allegations of fraud, mistake, failure of consideration and *quia timet.* Petitioner correctly points out that rescission is proper when the complaining party has suffered a breach so material and substantial in nature that it affects the very essence of the contract and serves to defeat the objective of the parties. *Castle v. Cohen*, 676 F.Supp. 620 (E.D.Pa. 1987), *aff'd in part and remanded in part*, 840 F.2d 173 (3d Cir.1988). Certainly, any dissemination of negative or damaging information by the Commission concerning Peti-

tioner's job performance would constitute a material and substantial breach. The Commission maintains, however, that there was no breach of the agreement.

Paragraphs 4 and 7 of the agreement contain the terms in issue:

4. All records and documents relating to personnel matters involving Mr. Keenheel prepared by the Commission, its staff, or Mr. Keenheel during the period from January 1, 1987, and the date hereof with the exception of routine data, shall be held by the Commission as non-public records pursuant to the Pennsylvania "Right to Know Act", Act of June 21, 1957, P.L. 390, § 1 *et seq.*. 65 P.S. § 66.1 *et seq.*, and information relating to such non-public records shall not be publicly disclosed.

. . . .

7. In response to any request for information regarding Mr. Keenheel's evaluation and performance as an attorney with the Commission, the Commission, its officers, and employees shall state that the most recent evaluation in Mr. Keenheel's personnel file, which is dated December 1986, indicated an overall performance of "very good."

Petitioner alleges that approximately two months after the execution of the agreement, he had a chance encounter with Douglas A. Abrahams, an attorney from the Securities and Exchange Commission, who stated that he had been informed by the Assistant Director of Enforcement of the Commission that Petitioner had left the Commission due to a dispute with his supervisor concerning whether disgorgement could be sought by the Commission. Petitioner maintains that the statements made to Mr. Abrahams constituted a breach of paragraphs 4 and 7 inasmuch as they represent a disclosure of information and allegations concerning Petitioner's handling of an investigation to a member of the public and the bar. Petitioner further asserts that this disclosure was caused by the failure of the Commission to inform the supervisor that such information was confidential and non-public. The issue thus becomes wheth-

er this disclosure to Mr. Abrahams constituted breach of the agreement.

## V

This Court can only allow summary judgment if the pleadings, depositions, answers to interrogatories, and the admissions on file establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The record must be examined in the light most favorable to the non-moving party. This Court must accept as true all well-pleaded facts giving the Petitioner the benefit of all reasonable inferences to be drawn therefrom. It is not this Court's function to weigh the evidence and to determine the truth of the matter; moreover, all doubts as to the existence of a genuine issue as to a material fact should be resolved against the moving party. *Kozura v. A & J Quality Shoppe, Inc.*, 117 Pa.Commonwealth Ct. 9, 542 A.2d 637 (1988); *Muncy Area School District v. Gardner*, 91 Pa. Commonwealth Ct. 406, 497 A.2d 683 (1985). The threshold question therefore in determining the need for trial is whether genuine factual issues exist which can only be resolved by the factfinder who may reasonably resolve the issues in favor of either party to the proceeding.

On their face, the statements allegedly made by the Commission's Pittsburgh employee to Mr. Abrahams may not appear to be a violation of the agreement; however, although such statements may appear on surface to be harmless, other factors might render seemingly innocent statements more sinister. *See Raffensberger v. Moran*, 336 Pa.Superior Ct. 97, 485 A.2d 447 (1984), which held that an allegedly defamatory statement capable of an innocuous interpretation should have been presented to the jury to see if another interpretation was possible. Testimony from the witnesses involved in the matter *sub judice* is necessary in order for this Court to properly evaluate the impact and conveyed meaning of the statements allegedly made and whether or not they constitute a breach of the agreement.

Accordingly, the motion for summary judgment filed by the Commission and the cross-motion for summary judgment filed by Petitioner are hereby denied, and trial shall proceed on the merits.

## ORDER

AND NOW, this 21st day of August, 1990, the motion for summary judgment filed by Respondent, Pennsylvania Securities Commission and the cross-motion for summary judgment filed by Petitioner Mark S. Keenheel are hereby denied.